people v angelo rivera, 012747

1-01-2747

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court

Plaintiff-Appellee, ) of Cook County.

)

) No. 85 C 2138

)

ANGELO RIVERA, ) Honorable

) Kenneth J. Wadas,

Defendant-Appellant. ) Judge Presiding.

MODIFIED UPON DENIAL OF REHEARING

JUSTICE REID delivered the opinion of the court:

Following the entry of a final judgment and dismissal of a postconviction petition, Angelo Rivera (Rivera) filed the present appeal challenging the propriety of the summary dismissal of his petition for postconviction relief.  Rivera has been tried and convicted twice for murdering Zelia Simmons.  A detailed statement of the facts surrounding the murder may be found in 
People v. Rivera
, 166 Ill. 2d 279 (1995).  We now confine ourselves to those facts necessary to dispose of the issues brought before us.  For the reasons that follow, we affirm the dismissal of the postconviction petition.

BACKGROUND

Angelo Rivera was originally tried, convicted and sentenced to 60 years in prison for the murder.  That sentence was based on the law as it attached to this defendant at the time of his original trial and a finding that the defendant’s behavior was exceptionally brutal and heinous,  indicative of wanton cruelty.  On direct appeal from the original conviction, we affirmed the conviction and sentence.  
People v. Rivera
, 165 Ill. App. 3d 1158 (1988) (unpublished order under Supreme Court Rule 23).  While incarcerated, Rivera filed a 
habeas corpus
 petition in federal court.  The Seventh Circuit vacated the judgment against Rivera and ordered a new trial.  
Rivera v. Department of Corrections
, 915 F.2d 280 (7th Cir. 1990).  Rivera thereafter was tried for the murder for the second time.  “Following a second trial  in the circuit court of Cook County, a jury convicted defendant, Angelo Rivera, of the first degree murder of Zelia Simmons.  Defendant was subsequently sentenced to an extended term of 80 years' imprisonment."  
People v. Rivera
, 166 Ill. 2d 279, 281 (1995).  The trial court again found that the crime was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty.  Additionally, the trial court considered the fact that Rivera had been convicted while incarcerated of weapons violations in jail.  "The appellate court affirmed the circuit court’s judgment * * *.”  
Rivera
, 166 Ill. 2d at 281, citing 
People v. Rivera
, No. 1-92-1613 (February 28, 1994).  The Illinois Supreme Court thereafter agreed to take the case and, in 1995, affirmed both the conviction and the enhanced sentence, holding that the trial court could properly increase defendant’s sentence based on defendant’s weapons violations occurring subsequent to his original sentencing.  
Rivera
, 166 Ill. 2d at 294.  At the time of this ruling by the Illinois Supreme Court, a finding of the trial court of exceptional brutality or heinous behavior indicative of wanton cruelty did not have to be charged in the indictment and proven beyond a reasonable doubt.  Such a finding could be made by the trial court.  The Illinois Supreme Court’s ruling became law of the case, closing all the doors to Rivera and terminating his litigation related to that crime.  Or, rather, that is what everyone would have thought because that is what normally happens.

In 2000, the United States Supreme Court issued its landmark opinion in 
Apprendi v. New Jersey
, 530 U. S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).  On April 23, 2001, armed with the 
Apprendi
 decision, and based on the trial court’s specific finding that the crime was committed with exceptional brutality and heinous behavior indicative of wanton cruelty, Rivera filed the instant postconviction petition.  In his petition, he argued that the prescribed sentencing range for a murder committed in 1985 was between 20 and 40 years.  He argues that both the original and subsequent enhanced sentences were beyond the then-statutory maximum.  In light of the 
Apprendi
 ruling, Rivera argues that such an extended-term sentence, imposed without proof of the aggravating factors beyond a reasonable doubt, is improper.  Based on the concept of 
res judicata
, an 
Apprendi
 argument was the only door open to Rivera.  
Rivera asked the trial court to reduce his sentence to 40 years, to make it in line with the statute in effect at the time of the commission of the murder.  The trial court, acknowledging that 
Apprendi
 prohibits the imposition of an extended-term sentence based solely upon the heinous and brutal nature of the crime when the sentence imposed is beyond the statutory maximum and the brutality finding is not found to exist beyond a reasonable doubt by the trier of fact, dismissed the postconviction petition as frivolous and patently without merit.  The trial court’s decision was based, in part, on the notion that 
Apprendi
 could not be applied retroactively to postconviction claims.  

ANALYSIS

The Post-Conviction Hearing Act (725 ILCS 5/122-1 
et
 
seq
. (West 2000)) provides a remedy for a criminal defendant who can establish a substantial deprivation of his constitutional rights at trial.  
People v. Tomasello
, 329 Ill. App. 3d 1053, 1056 (2002), citing 
People v. Brisbon
, 164 Ill. 2d 236, 242 (1995).  A court may summarily dismiss the petition without appointing counsel if it determines that the petition is frivolous or patently without merit.  
Tomasello
, 329 Ill. App. 3d at 1056; 725 ILCS 5/122-2.1 (West 2000).  In determining whether the summary dismissal was correct, we review the allegations in the petition 
de novo
.  
Tomasello
, 329 Ill. App. 3d at 1056, citing 
People v. Coleman
, 183 Ill. 2d 366, 388-89 (1998).

A postconviction proceeding is not an appeal of the underlying judgment but, rather, a collateral proceeding where the defendant may challenge a conviction or sentence for violations of constitutional rights.  
People v. Johnson
, 183 Ill. 2d 176, 186 (1998).  Any claim of substantial denial of constitutional rights that was not raised in the original or in an amended petition is waived. 725 ILCS 5/122-3 (West 2000). In addition, the court's ruling on a postconviction petition has 
res judicata
 effect as to all claims raised in the petition as well as those that could have been raised.  
People v. Flores
, 153 Ill. 2d 264, 274 (1992).  The operation of waiver and 
res judicata
 has generally contributed to the finality of criminal litigation.  Where a defendant has previously taken a direct appeal from a judgment of conviction, the judgment of the reviewing court is 
res judicata
 as to all issues actually decided by the court, and any other claims that could have been presented to the reviewing court, if not presented, are waived.  
People v. Neal
, 142 Ill. 2d 140, 146 (1990);  
Johnson
, 183 Ill. 2d at 186.

Apprendi
 stands for the proposition that "'"It is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed.  It is equally clear that such facts must be established by proof beyond a reasonable doubt."'"  
People v. Beachem
, 317 Ill. App. 3d 693, 698 (2000), quoting 
Apprendi
, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2363, quoting 
Jones v. United States
, 526 U.S. 227, 252-53, 143 L. Ed. 2d 311, 332, 119 S. Ct. 1215, 1228-29 (1999) (Stevens, J., concurring).  As a basis for the ruling, the United States Supreme Court explained as follows:

“‛[T]o guard against a spirit of oppression and tyranny on the part of our rulers,’ and ‛as the great bulwark of [our] civil and political liberties,’ 2 J. Story, Commentaries on the Constitution of the United States 540-541 (4th ed. 1873), trial by jury has been understood  to require that ‛the truth of every accusation, whether preferred in the shape of indictment, information, or appeal, should afterwards be confirmed by the unanimous suffrage of twelve of [the defendant’s] equals and neighbours....’ 4 W. Blackstone, Commentaries on the Laws of England 343 (1769)."  (Emphasis omitted.)  
Apprendi
, 530 U.S. at 477, 147 L. Ed. 2d at 447, 120 S. Ct. at 2356.

Apprendi
 only implicates those facts that increase the penalty for a crime beyond the prescribed statutory maximum:

“We should be clear that nothing * * * suggests that it is impermissible for judges to exercise discretion--taking into consideration various factors relating both to offense and offender--in imposing a judgment 
within the range
 prescribed by statute.  We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence 
within statutory limits
 in the individual case.”  (Emphasis in original.)  
Apprendi
, 530 U. S. at 481, 147 L. Ed. 2d at 449, 120 S. Ct. at 2358.   

Rivera argues in this postconviction petition that the 
Apprendi
 case so changed the bedrock principles of criminal trials that its mandate must be applied retroactively to defendants in his situation.  He also argues that the applicable statute in effect at the time of his original trial and conviction must limit his sentence for murder to 20 to 40 years.  Since the enhanced sentence was imposed without proof of the aggravating factors beyond a reasonable doubt, Rivera argues that his sentence violated 
Apprendi
.

The State argues that the 
Apprendi
 decision constitutes a new rule of constitutional law.  As a result, the State contends that the 
Apprendi
 rule does not apply retroactively to collateral proceedings such as Rivera’s petition for postconviction relief.  It argues that the purpose of the 
Apprendi
 rule is to promote the State's interest in the finality of its criminal convictions and to validate reasonable, good-faith interpretations of existing precedents made by state courts.  
Teague v. Lane
, 489 U. S. 288, 305-10, 103 L. Ed. 2d 334, 352-56, 109 S. Ct. 1060, 1073-75 (1989) (finality of convictions); 
People v. Flowers
, 138 Ill. 2d 218, 237-239 (1990) (interpretation of existing precedent).  In so doing, the State argues that 
Apprendi
 does not implicate procedures implicit in the concept of ordered liberty because it does not affect the fairness and accuracy of the entire criminal proceeding.  The State argues that 
Apprendi
 does not make more accurate the process by which a defendant is found guilty of an offense since it only goes to the enhancement of a sentence in a case where the defendant has already been convicted beyond a reasonable doubt.  Though 
Apprendi
 stands for the proposition that the factors that would permit an enhanced sentence must be placed before the jury, the State argues that more is required to warrant retroactivity under 
Teague
.

The State also argues that 
Apprendi
 is inapplicable because the 80-year sentence does not exceed the statutory maximum for the offense of murder.  The State contends that the statutory scheme for dealing with murder is comprehensive in its scope, ultimately establishing the maximum possible penalty for murder as death.  As such, the State disputes the claim made by Rivera that the upper limit of punishment for murder is a term of 40 years.  The State directs this court to the entirety of the murder statute and its corresponding punishment provisions as support for the claim that the upper limit is death.  This is based upon the argument that the elements of the crime are the same regardless of whether a defendant being prosecuted may be sentenced to death, natural life, or a finite number of years.  The State further argues that, based upon the findings and conclusions of the Illinois Supreme Court in Rivera’s direct appeal from his second trial, any rational trier of fact considering Rivera’s use of the hammer to kill the victim would have found beyond a reasonable doubt the requisite factor to impose an extended-term sentence for murder.

The Illinois Supreme recently determined that 
Apprendi
 is not retroactive.  
People v. De La Paz
, 204 Ill. 2d 426 (2003).

“
Apprendi
 is about sentencing only.    
For 
Apprendi
 concerns to come into play, a criminal defendant must already have been found guilty of the underlying crime.  A defendant raising an 
Apprendi
 claim on appeal is simply complaining that he received a sentence in excess of the normal sentencing range, without the fact or facts necessary to permit such sentence having been proven to a jury beyond a reasonable doubt.”  
De La Paz
, 204 Ill. 2d at 436-37, citing 
United States v. Sanchez-Cervantes
, 282 F.3d 664, 671 (9th Cir. 2002).

“Decisions that announce a new constitutional rule are generally not applied retroactively.”  
People v. Lee
, 326 Ill. App. 3d 882, 887 (2001), citing 
People v. Moore
, 177 Ill. 2d 421 (1997).  “In 
Teague v. Lane
, 489 U. S. 288, 311, 103 L. Ed. 2d 334, 356, 109 S. Ct. 1060, 1075 (1989), the United States Supreme Court held that a new rule of law would only be applied retroactively to cases on collateral review under two limited exceptions.  First, the rule should apply retroactively if ‛it places “certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.” ’ ”  
Lee
, 326 Ill. App. 3d at 887.  “
Second, the new rule should apply ‛if it requires the observance of “those procedures that are ‛implicit in the concept of ordered liberty’ ” [citation] ***.' "   
Lee
, 326 Ill. App. 3d at 887, quoting 
Teague
, 489 U. S. at 311, 103 L. Ed. 2d at 356, 109 S. Ct. at 1076.  "The scope of the second exception has been limited to those procedures 'without which the likelihood of an accurate conviction is seriously diminished.' "  
Lee
, 326 Ill. App. 3d at 887, quoting 
Teague
, 489 U. S. at 313, 103 L. Ed. 2d at 358, 109 S. Ct. at 1077.  “Further, the second exception should only apply to rules of criminal procedure that ‛ " 'will properly alter our understanding of the 
bedrock procedural elements
’ " ' essential to the fairness of a conviction.  (Emphasis in original.)”  
Lee
, 326 Ill. App. 3d at 887, quoting 
Teague
, 489 U. S. at 311, 103 L. Ed. 2d at 356, 109 S. Ct. at 1076, quoting 
Mackey v. United States
, 401 U.S. 667, 693-94, 28 L. Ed. 2d 404, 421, 91 S. Ct. 1160, 1180-81 (1971).  “The second exception applies not only to an accurate conviction but also to new procedures that question the accuracy of a sentence.”  
Lee
, 326 Ill. App. 3d at 887, citing 
Teague
, 489 U. S. 288, 103 L. Ed.2d 334, 109 S. Ct. 1060.  The Illinois Supreme Court officially adopted the 
Teague
 exceptions in 
People v. Flowers
, 138 Ill. 2d 218 (1990).

In 
De La Paz
, the Illinois Supreme Court reasoned that “an 
Apprendi
 violation does not mean that a defendant is imprisoned on ‛a charge never made * * * and never heard by the jury.’  The most that can be said is that an 
Apprendi
 violation results in a defendant’s imprisonment on a charge 
one element of which
 – the sentencing enhancement – was not proven to the jury beyond a reasonable doubt.”  (Emphasis in original.)   
De La Paz
, 204 Ill. 2d at 437.  
“The Supreme Court has already held that ‛failure to submit [an] element of’ a crime to a jury may constitute harmless error (
Neder v. United States
, 527 U. S. 1, 19-20, 144 L. Ed. 2d 35, 53, 119 S. Ct. 1827, 1839 (1999)), a holding which applies in the 
Apprendi
 context.”  
De La Paz
, 204 Ill. 2d at 437, citing 
People v. Thurow
, 203 Ill. 2d 352 (2003).  

In light of 
De La Paz
, and the Supreme Court’s conclusion that retroactivity is an all-or-nothing proposition, we must decline to apply 
Apprendi
 retroactively.  “An error which does not seriously affect the fairness, integrity or public reputation of judicial proceedings in one or more cases cannot be such a bedrock procedural element essential to the fairness of the proceeding as to fall within the second 
Teague
 exception, requiring retroactive application in all cases.”  
De La Paz
, 204 Ill. 2d at 438.

We can affirm the trial judge’s judgment on any grounds warranted by the record, regardless of the trial judge’s stated reasons for ruling.  
People v. Lee
, 325 Ill. App. 3d 643, 660 (2001), citing 
People v. Nash
, 173 Ill. 2d 423, 432 (1996); 
People v. Everette
, 141 Ill. 2d 147, 158 (1990), citing 
Material Service Corp. v. Department of Revenue
, 98 Ill. 2d 382, 387 (1983).  “A trial court need find only a single statutory factor in aggravation to impose an extended sentence.”  
People v. Hopkins
, 201 Ill. 2d 26, 39 (2002).  We now turn to whether an extended- term sentence was appropriate upon Rivera’s retrial.  In its recitation of the extensive procedural history of the case, the Illinois Supreme Court noted:

“At defendant's sentencing hearing, the court was advised that while defendant was incarcerated between his first and second trials, he was convicted of unlawful use of a weapon in a penal institution.  For this offense, defendant received a five-year sentence to run consecutive to the 60-year term imposed upon his first conviction. The court was also informed that subsequent to the weapons conviction, several shanks were found by prison authorities in defendant's cell.  For this second weapons violation, defendant was punished administratively by loss of good time and placement in segregation.  In imposing sentence, the trial court commented that defendant's crime was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty.  The trial court also indicated that it took into account the subsequent criminal activity of defendant while he was incarcerated between his trials, in increasing defendant's sentence to 80 years.”  
Rivera
, 166 Ill. 2d at 293-94.

Based on the state of the law at the time, the Illinois Supreme Court ruled that the 80-year extended-term sentence was appropriate because “the trial court could properly increase defendant’s sentence based on defendant’s weapons violations occurring subsequent to his original sentencing.”  
Rivera
, 166 Ill. 2d at 294.  “In 
North Carolina v. Pearce
 (1969), 395 U.S. 711, 723-24, 23 L. Ed. 2d 656, 668, 89 S. Ct. 2072, 2079-80, the United States Supreme Court held that increased sentences imposed after retrial are not barred by the double jeopardy or equal protection clauses unless such increased sentences are motivated by vindictive retaliation by the trial judge.”  
Rivera
, 166 Ill. 2d at 294.  The Illinois Supreme Court went on to hold that “there is not the slightest bit of evidence in the record to support defendant’s claim of vindictiveness by the sentencing judge.  It appears in the record that the court based its decision to increase defendant’s sentence by 20 years on defendant’s subsequent weapons offenses.”  
Rivera
, 166 Ill. 2d at 295.

“[The Illinois Supreme C]ourt followed 
Pearce
 in 
People v. Baze
 (1969), 43 Ill. 2d 298, 302, reasoning that an ‛increased sentence on retrial does not offend the constitutional guarantee against double jeopardy where the original conviction is set aside at defendant’s behest and credit is given for time served.’  The court further held that an increased sentence after retrial may be proper if the court is able to point to specific conduct on the part of the defendants occurring subsequent to their original sentencing, which warrants a heavier sentence.”  
Rivera
, 166 Ill. 2d at 294-95, quoting 
Baze
, 43 Ill. 2d at 302.  

In 1973, the Illinois legislature enacted section 5-5-4 of Unified Code of Corrections (
Ill. Rev. Stat. 1985, ch. 38, par. 1005-5-4
).  That section reads:

“Where a conviction or sentence has been set aside on direct review or on collateral attack, the court shall not impose a new sentence for the same offense or for a different offense based on the same conduct which is more severe than the prior sentence less the portion of the prior sentence previously satisfied 
unless the more severe sentence is based upon conduct on the part of the defendant occurring after the original sentencing
.”  (Emphasis added.)  
Ill. Rev. Stat. 1985, ch. 38, par. 1005-5-4.

The Illinois Supreme Court has ruled that the “defendant’s weapons violations were clearly legitimate matters for the trial court to consider in imposing an increased sentence.”  
Rivera
, 166 Ill. 2d at 295.  According to the United States Supreme Court, " '[s]uch information may come to the judge’s attention from evidence adduced at the second trial itself, from a new presentence investigation, from the defendant’s prison record, or possibly from other sources.' "  
Rivera
, 166 Ill. 2d at 294, quoting 
Pearce
, 395 U. S. at 723, 23 L. Ed. 2d at 668, 89 S. Ct. at 2079.

Under the statutory scheme, “[e]very person convicted of an offense shall be sentenced as provided in [section 5-5-3 of the Unified Code of Corrections].”  
Ill. Rev. Stat. 1985, ch. 38, par. 1005-5-3(a).
  With the exception of those felonies and misdemeanors listed in subsection (c) of section 
5-5-3
, defendants found guilty of all felonies and misdemeanors can be sentenced to a fine, a period of probation, a term of imprisonment, a term of periodic imprisonment, a term of conditional discharge, an order directing the defendant to clean up and repair damage, or an order directing the defendant to pay restitution to the victim.  
Ill. Rev. Stat. 1985, ch. 38, par. 1005-5-3(b)
.  Along with other factors, a defendant's criminal and incarceration history becomes relevant in subsequent sentencing decisions. 

Rivera, while incarcerated, was convicted of violating section 24-1.1 of the Criminal Code of 1961 (720 ILCS 5/24-1.1 (West 1992)).  That section deals with the unlawful use or possession of a weapon by felons or persons in the custody of the Department of Corrections Facilities, which is a violation of the law regardless of the intent with which the weapon is possessed.  “Any person who violates [section 24-1.1] while confined in a penal institution, which is a facility of the Illinois Department of Corrections, is guilty of a Class 1 felony.”  720 ILCS 5/24-1.1 (West 1992).

At the time defendant committed the offense of unlawful use of a weapon in a penal institution, he had been convicted of murder within the previous 10 years, excluding time spent in custody.  Therefore, defendant was eligible for an extended-term sentence.  Though the events in prison took place after the murder for which he was on trial, the law operates so as to make the unlawful-use-of-a-weapon-by-a-felon-while-incarcerated conviction considered as a prior event.  It is a legal fiction, one that the Illinois Supreme Court has specifically authorized.  It is the law of the case.   “ ‛A trial judge is not constitutionally precluded, in other words, from imposing a new sentence, *** in the light of events subsequent to the first trial that may have thrown new light upon the defendant’s “life, health, habits, conduct, and mental and moral propensities.” ’ ”  
Rivera
, 166 Ill. 2d at 294, quoting 
Pearce
, 395 U.S. at 723, 23 L. Ed. 2d at 668, 89 S. Ct. at 2079, quoting 
Williams v. New York
, 337 U. S. 241, 245, 93 L. Ed. 1337, 1341, 69 S. Ct. 1079, 1082 (1949).  In many respects, harsh though the result may be, Rivera has no one to blame but himself.  Obviously, he should not have murdered anyone.  He also should not have committed the unlawful use of a weapon.  In essence, by his own hand, Rivera provided the court with justification to impose an extended-term sentence without implicating 
Apprendi
.  The unlawful- use-of-a-weapon conviction operates independently, making the extended-term sentence one of the recognized exceptions to the 
Apprendi
 rule.  We have no choice but to apply Rivera’s unlawful-use-of-a-weapon-by-a-felon-while-incarcerated charges and find that they effectively predate his murder conviction and, by the ruling of the Illinois Supreme Court in his direct appeal and in light of the Supreme Court’s decisions in 
De La Paz
, were properly considered. 

CONCLUSION

In light of the foregoing, the decision of the trial court to dismiss Rivera’s postconviction petition is affirmed.

Judgment affirmed.

Quinn, J. and Hartigan, J.,
(footnote: 1) concur.

FOOTNOTES
1:
Justice Buckley retired in 2002.  Justice Hartigan succeeded him in his position.